# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILEMEDIA IDEAS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:10-CV-113 |
| v. | § | |
| | § | |
| RESEARCH IN MOTION LIMITED and | § | |
| RESEARCH IN MOTION CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## JOINT MOTION FOR ENTRY OF DISPUTED
## DOCKET CONTROL ORDER AND DISCOVERY ORDER

Plaintiff MobileMedia Ideas LLC ("Plaintiff" or "MMI") and defendants Research In Motion Limited and Research In Motion Corporation ("Defendants" or "RIM") respectfully submit their proposed Docket Control Order and Discovery Order pursuant to the Order setting status conference dated January 20, 2011 (Dkt. 59) and the Court's determinations at the status conference held on February 16, 2011.

Having met and conferred, the parties have largely reached agreement on the form and content of the Docket Control Order and Discovery Order. The three issues upon which the parties are unable to reach agreement are (1) the inclusion of a date (Defendants propose July 15, 2011) by which the parties must report to the Court on whether they have reached an agreement to limit the number of patents and claims in dispute or, if not, to submit competing proposals; (2) page limitations on letter briefs seeking permission to file any summary judgment motion; and (3) limitations applicable to fact depositions and testifying expert witnesses. The parties respective positions as to the disputed issues are set forth below. The parties' competing proposals with respect to the issues are set forth in brackets in the proposed Docket Control Order submitted

herewith, *see* Proposed Docket Control Order at p. 3 (claim limitation procedure); pp. 5-6 (letter briefs), and the proposed Discovery Order submitted herewith.  *See* Proposed Discovery Order at pp. 5-6 (limitations on depositions); and pp. 6-7 (experts).

## I.    PLAINTIFF'S POSITION

### A.    Proposed Discovery Order

**Limitations on Depositions:**  Plaintiff proposes that the parties be limited to 160 hours per side of party and non-party fact deposition testimony (subject to modification for good cause). Defendants agree that Plaintiff should be limited to 160 hours, but propose that they be allowed to take over 356 hours of deposition testimony, 7 hours for each and every inventor (14 hours for inventors testifying through a translator), plus 125 additional hours.[1]  Defendants' one-sided proposal should be rejected.

First, regardless of the number of hours selected, each side should have equal time for deposition discovery as contemplated by the Federal Rules.  While Defendants note there are 12 patents-in-suit implicating inventors as potential deponents, there are also numerous accused products implicating the potential testimony of many Defendant and non-party witnesses. Contrary to Defendants' position, there is no *per se* reason Defendants must take a 7-14 hour deposition of each and every named inventor of each patent.  Many of the patents-in-suit have 3, 4 or 5 named inventors:  7-14 hours of testimony from each of these individuals is likely to be redundant and unnecessary.  More realistically, one inventor deposition (or 7 hours) for each patent is likely to be sufficient.  Creating a separate category for inventor testimony not subject to

---

[1]   There are 33 named inventors of the 12 patents-in-suit, 24 of whom are foreign.  Thus, Defendants' 7 or 14 hours-per-inventor proposal could result in 231-400 hours of inventor testimony and 356-525 hours of total fact depositions for Defendants.

the overall limit applicable to other witnesses would encourage inefficient and wasteful use of deposition time.

Second, an equal 160-hour per side limit will allow each side, as an initial matter, to take approximately 23 7-hour depositions, well-over double the presumptive 10 deposition limit in the Federal Rules. See Fed. R. Civ. P. 30(a)(2). Indeed, because the proposed limit is an hourly one, the parties will be able to take the testimony of many more than 23 fact witnesses each if they use their time efficiently. For example, Defendants could take a half-day deposition of every named inventor and 12 other fact witnesses. Extending the initial deposition limit to 356+ hours for Defendants (i.e., more than 55 full-day depositions) will lead to wasted resources and the noticing of unnecessary depositions. The goal of the Federal Rules in setting a limit on the number of depositions permitted without leave is to ensure that the parties engage in thoughtful and cost-effective use of deposition discovery. See 7 Moore's Federal Practice § 30.05[1][b] (3d ed.). Absent a meaningful limit on total deposition hours, that goal will not be realized. Moreover, because the proposed Discovery Order provides that the limitations on discovery may be modified for good cause (¶ 4(F)), the 160-hour per-side limit will not preclude either side from seeking additional deposition time in the event doing so proves necessary.

Defendants also propose that each side be permitted to take only 21 hours of Federal Rule 30(b)(6) testimony. While Plaintiff agrees that corporate depositions should be subject to reasonable limitations (and governed by the overall limitation on deposition hours), a specific hourly limit on Rule 30(b)(6) testimony is unnecessary and premature. At this stage, the parties have not exchanged written or document discovery, and it is unclear to what degree Rule 30(b)(6) testimony of parties and non-parties, as opposed to the testimony of named witnesses, will be necessary. Imposing a limit on the use of Rule 30(b)(6) at this stage could encourage

3

gamesmanship and make it difficult to pin down corporate positions as to the issues in dispute.[2]

      **Limitation on Experts**:  Plaintiff is proposing a reasonable limit of 5 testifying experts per side.  Defendants propose 12 experts per side, apparently because there are 12 patents-in-suit. There is no basis for Defendants' suggestion that the number of patents in suit requires this extraordinary number of experts.  The accused products are various "smart phone" models made and sold by Defendants, and the patents-in-suit read on various features of those related products. Although some of the patents are directed to smart phone features such as call handling, whereas others are directed to features such as music playback or image conversion, there is no merit to RIM's argument that the technology is so disparate that 12 separate testifying expert witnesses are needed for one class of accused products made by one company.

      Likewise, Defendants' proposal that three-hours of deposition time be allowed for each patent on which an expert opines—raising the potential for 36-hour expert depositions—makes little sense as a presumptive discovery limitation.  Plaintiff's proposal is to use the usual 7-hour rule for experts, with the proviso that the parties will negotiate extended limits for experts testifying as to multiple patents or on multiple issues, thus allowing for individualized consideration of the amount of deposition time needed after reports have been produced, rather than establishing an unworkable blanket rule.

---

[2]   Faced with similar competing proposals in MMI's action against HTC (which also involves accused "smart phones" and a similar number of patents (11 in that case)), Judge Ward rejected HTC's parallel arguments that it should be entitled to a disproportionate share of deposition testimony, and concluded that 200 hours of fact depositions per side would be appropriate without a cap on Rule 30(b)(6) testimony.  *See MobileMedia Ideas LLC v. HTC Corp.*, *et al.*, Civ. A. No. 2:10-cv-112(TJW), Dkt. 54 at 4 (March 17, 2011).

### B.     Proposed Docket Control Order

**Claim Limitation Procedure**: Defendants propose that the Docket Control Order require the parties by July 15, 2011—15 days after Defendants' P.R. 3.4 disclosures are due—to either agree to limit the number of patents and claims in dispute or submit competing proposals to the Court.  Both the proposed procedure and deadline are unnecessary and inappropriate. While the Court of Appeals for the Federal Circuit has recently confirmed that a District Court may impose limitations on the number of asserted claims in an action, it did so in the context of a multi-district litigation in which 1,975 claims had been asserted from 31 patents against 165 defendants, in circumstances where the patents shared a common genealogy and apparently contained many duplicative claims.  *See In re Katz Interactive Call Processing Litig.*, 2011 WL 607381, *1-*4 (Fed. Cir. Feb. 18, 2011).  Here, in contrast, the 12 asserted patents do not share a common genealogy.  Moreover, because the parties have not yet exchanged infringement and invalidity contentions or commenced discovery, it is simply too soon to assess whether *any* limit on the number of asserted claims is needed in the context of this action, much less to set a date by which parties will submit "competing proposals" to the Court.  *See also id.* at *4 n.9 (cautioning against a claim selection procedure too early in the discovery process).  Rather than setting an arbitrary date in the Docket Control Order, the parties should proceed with the Patent Rule disclosures and discovery.  If Defendants thereafter continue to believe a limitation on the number of asserted claims is necessary and the parties cannot reach agreement, Defendants will be free to submit a motion at an appropriate time.

**Length of Letter Briefs**: Defendants propose that the page limit for letter briefs seeking permission to file any motion for summary judgment be extended to "one page per patent," *i.e*., up to 12 pages (and up to six pages for replies).  Such an extended limitation would defeat the

purpose of having pre-motion letter briefs, and is unnecessary.  The Court's usual limit of 5 pages would allow the parties to succinctly state the need for summary judgment motions, and Plaintiff has agreed to extend that limit to 6 pages (subject to the approval of the Court) in the interest of compromise.

*      *      *

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the Discovery and Docket Control Orders adopting Plaintiff's proposals.

## II.    DEFENDANTS' POSITION

MMI accuses 25 different RIM BlackBerry models of infringing 12 separate patents, comprising 253 claims, originally assigned to Nokia and Sony entities.  The patents name 33 different inventors, none of whom have ever worked for MMI, and none of whom MMI has committed to produce for deposition.  Most of those inventors are located in Japan and Finland. None of the 12 patents are related; none of the named inventors are listed as inventors of more than one of the asserted patents; none of the asserted patents share common specifications; and none of the asserted patents belong to the same patent family.  Furthermore, the 12 patents involve distinct technologies, such as camera functionality, call-handling features, user profiles, user interfaces, menu navigation, digital music playlists, and call volume adjustment, to name a few.

RIM's proposed Discovery Order and Docket Control Order (attached hereto as Exhibits A and B, respectively) reflect the nature of the case that MMI brought against it – one in which MMI asserts 12 unrelated patents covering a wide range of technologies and that include more than 250 claims.  MMI's proposals  are inconsistent with this reality and, in effect, seek to hold RIM to the discovery that might be appropriate in a case involving two or three related patents.  As shown below, MMI's proposals are so unreasonable that, if adopted, RIM could not even depose each of

the named inventors, much less prosecuting counsel or prior art witnesses for the broad array of technologies asserted.

### A.     Fact Witness And Inventor Deposition Hours

The parties have each proposed a similar number of fact deposition hours per side – RIM has proposed 125 hours, while MMI has proposed 160 hours per side.  The primary difference between the parties' positions, however, is that RIM's proposal takes into account the time that will be required to depose essential fact witnesses – the inventors of the 12 asserted patents – by exempting from its fact deposition limit the hours spent deposing these inventors.

As mentioned above, this case involves 33 named inventors.  MMI's proposal would not afford RIM sufficient deposition hours even to take a full deposition of each of these inventors much less leave any time for any other witness who might have necessary information, such as witnesses knowledgeable about the prosecution of the patents, prior art to the patents, MMI's acquisition of the patents and its standing to assert them, or any of the myriad of other standard lines of discovery in patent cases.  By asserting 12 patents against RIM, while simultaneously arguing for severe restrictions on RIM's ability to take standard fact depositions and refusing to set a deadline by which MMI will limit the asserted claims for trial, MMI is attempting the exact trial-by-surprise tactics the rules exist to prevent.  MMI should not be permitted to employ this strategy to prejudice RIM.

Further, most of the named inventors are located in Japan or Finland.  Many of those depositions may need to proceed by translation, which significantly increases the time for deposition.  Accordingly, RIM has proposed additional time to depose inventors who require a translator.

MMI has stated that it needs no more than 160 hours of deposition to prosecute this case, to

which RIM has agreed; and RIM proposes a smaller number of hours for its non-inventor

discovery.  Having obtained exactly the number of hours for its own discovery that it seeks, MMI

should not be heard to complain of any unfairness if RIM, in addition, is allowed to depose each of

the named inventors.  Simply put, MMI has no similar problem, and it is only through MMI's

decision to assert 12 unrelated patents with 33 inventors that requires the proposal that RIM seeks.

RIM should not be prejudiced because MMI brought such a complicated case.

Furthermore, as a means of minimizing the burden on the parties, RIM also proposes a

limit of twenty-one hours of Rule 30(b)(6) depositions of the opposing party.  RIM originally

proposed 8 hours, and in light of MMI's statement that it could compromise this issue in the "20s",

proposed three full days.  MMI, however, has not responded to this proposal.

### B.    Number Of Experts

The parties' dispute regarding the numbers of testifying expert witnesses similarly reflects

MMI's unwillingness to acknowledge the size and breadth of the case that it has brought.  Because

this is a 12-patent case spanning numerous technologies, RIM proposes that the parties be

permitted up to 12 testifying experts.  RIM's proposal would include both technical and damages-

related experts.  MMI, by contrast, arbitrarily seeks to limit the parties to only five testifying

experts, which after damages experts, for example, may leave only two or three experts to cover all

of the unrelated technologies in the patents that MMI asserts.

As described above, the 12 patents-in-suit are entirely unrelated and involve numerous

distinct technologies.  For example, asserted U.S. Patent No. 5,732,390 ("the '390 patent") is

directed to automatically adjusting the speech signal depending on background noise.  Asserted

U.S. Patent No. 5,737,394 ("the '394 patent") is directed to using dedicated and changeable keys

on a telephone apparatus.  Asserted U.S. Patent No. 6,427,078 ("the '078 patent") is directed to a

personal communication device with a camera having certain features.  Asserted U.S. Patent No 6,253,075 ("the '075 patent") is directed to rejection of incoming calls. And asserted U.S. Patent No. 6,446,080 ("the '080 patent") is directed to music playlists.  As just a handful of the examples of the patents MMI asserts, it is unlikely that an expert on cameras will also have expertise on how telephone keys can be designed.  An expert on music playlists is unlikely to be able to testify about how incoming calls are rejected.  An expert on automatic volume control cannot be expected to testify on any of the other subject matters.  While it is in RIM's own interest to streamline the case wherever possible by using one expert to cover multiple patents and products, it is unreasonable at this stage in the litigation – with potentially 253 asserted claims to defend against for 25 different products – for RIM to be limited in the number of technical experts to which it is entitled.  Even under RIM's proposal, it would necessarily have to have some of its technical experts opine on more than one of the 12 patents, since MMI has asserted a claim for damages (including lost profits and reasonable royalty damages).

Because none of the 12 asserted patents are in the same patent family, share a common specification, or contain overlapping claims, and because MMI accuses 25 distinct product models, MMI's suggestion that a single expert should be made to field all aspects of infringement and validity for four separate patents that, collectively, could recite over one hundred claims, is unreasonable.  Considering the number of patents and technologies involved, and the damages-related issues that are likely to require expert testimony, RIM's proposal of 12 testifying expert witnesses, at least at this early stage of the case, is warranted.

## C.    Expert Deposition Hours

Beyond the number of testifying experts permitted, the parties also dispute how to address limits on deposition time for expert witnesses where an expert witness opines on multiple patents.

RIM proposes that depositions of technical experts be limited to the greater of seven hours or three hours times the number of asserted patents that the expert addresses.  This allows for a party to have adequate time to depose an opposing party's expert in the event that the expert offers testimony on multiple patents.  MMI's proposal, in contrast, does not address this situation, instead deferring this dispute until some later point, when the parties will be required to waste the Court's time in motion practice or on the discovery hotline because an appropriate rule has not been addressed in advance.[3]

RIM's proposal prevents the gamesmanship of attempting to limit an opposing party's deposition time by using a single expert to opine on multiple patents.  And it does so in a reasonable manner – allowing three hours of deposition time per patent that the expert addresses is not burdensome to the parties or the expert.  MMI's proposal that the parties meet and confer on this issue at some later point makes little sense.  This issue should be resolved now, during a period of relative repose, not a year from now, when the parties will be in the midst of a very short expert discovery period, when a disagreement on this issue could have a significant impact on the timing of expert depositions and other case events, and when the prejudice from withholding consent and the disruption to the Court from having to petition for guidance will be maximal.  Because there is no reasoned basis to delay this issue, the Court should adopt RIM's proposal.

### D.    Date By Which MMI Agrees To Limit Patents And Claims In Dispute

It is a practical reality, which MMI concedes, that its 12 patents and 253 asserted claims cannot all be tried in a single case.  Recognizing this reality, and in the interests of efficiency and judicial economy, RIM proposes that the Court adopt a date certain by which MMI must limit the patents and claims that it intends to press at trial.  Moreover, because claim construction is the

---

[3]  MMI proposes that expert depositions be limited to seven hours each, "with the understanding that the parties will negotiate in good faith regarding extending that time limit for experts serving

point in the case at which MMI's large number of patents and claims will begin to tax the Court's resources, RIM proposes to set a date certain on or before July 15, 2011 – the date the claim construction process begins.

MMI does not dispute that it will need to narrow the patents and claims at some point, but refuses to agree to do so by July 15, 2011, or indeed by any date.  But failing to address this issue head on imposes a substantial, unnecessary burden on the Court and RIM.  The proposed P.R. 4-1 deadline to exchange claim terms is August 5 and the proposed deadline for MMI's opening claim construction brief is November 4.  As it currently stands, even if the parties were to seek construction of only five terms per patent, the Court would still be facing the construction of *60* terms.  With a limitation on the number of asserted patents and claims by July 15, before claim construction, the parties will submit fewer terms to the Court and the Court will avoid wasted effort construing the terms of claims that MMI ultimately decides to jettison from the case. Furthermore, the proposed deadline, July 15, is a full month after RIM must submit its invalidity contentions.  Thus, MMI will have a reasonable amount of time to assess RIM's invalidity positions prior to limiting the asserted patents and claims.  For these reasons, the Court should adopt RIM's proposal.

> **E.     Letter Brief Page Limits**

The last dispute between the parties relates to the process for submitting letter briefs to the Court seeking permission to file motions for summary judgment.  As with the other disputes discussed above, this dispute centers around how the size of the case affects its administration.  In a standard one-patent case, the Court affords the parties five pages for letter briefs on summary judgment issues.  A patent infringement suit that involves 12 patents presents many more complex

---

reports on multiple issues."

issues, some of which the parties will undoubtedly seek to raise with the Court through a motion

for summary judgment in order to streamline the case for trial.  RIM proposes that the parties be

permitted to submit opening and answering letter briefs up to five pages or one page per patent

remaining in the case at the time, whichever is greater, and reply letter briefs up to three pages or

one half page per patent remaining in the case at the time, whichever is greater.  MMI proposes

page limits that do not take into account the number of patents it has asserted – six pages for

opening and answering briefs and three pages for reply briefs.  The modest page extension that

RIM seeks is necessary due to the number of patents and claims in the case, and may ultimately

reduce the burden on the Court by providing it with a better understanding of the issues that the

parties seek to brief in the their summary judgment motions.  Of course, should MMI reduce the

number of patents it asserts to a triable number by the time for summary judgment, RIM's

proposal may not yield any page extension at all.  For these reasons, RIM respectfully petitions the

Court to accept RIM's proposal.

Dated:  March 18, 2011                    Respectfully submitted,


                                          By:  _/s/ Sam Baxter_____
                                          Samuel F. Baxter
                                          Lead Attorney
                                          State Bar No. 01938000
                                          sbaxter@mckoolsmith.com
                                          McKOOL SMITH P.C.
                                          104 East Houston, Suite 300
                                          Marshall, Texas 75670
                                          Telephone:  (903) 923-9000
                                          Facsimile:  (903) 923-9099

                                          John F. Garvish, II
                                          State Bar No. 24043681
                                          jgarvish@mckoolsmith.com
                                          McKOOL SMITH, P.C.
                                          300 W. 6th Street, Suite 1700
                                          Austin, TX 78701
                                          Telephone:  (512) 692-8700
                                          Facsimile:  (512) 692-8744

                                          Garrard R. Beeney
                                          Adam R. Brebner
                                          Taly Dvorkis
                                          Victoria A. Coyle
                                          SULLIVAN & CROMWELL LLP
                                          125 Broad Street
                                          New York, New York 10004
                                          Telephone: (212) 558-4000
                                          Facsimile: (212) 558-3588

                                          Kenneth Rubenstein
                                          Anthony Coles
                                          Evan L. Kahn
                                          PROSKAUER ROSE LLP
                                          1585 Broadway
                                          New York, New York 10036
                                          Telephone: (212) 969-3000
                                          Facsimile: (212) 969-2900

                                          *Attorneys for Plaintiff*
                                          *MobileMedia Ideas LLC*


13

Dated:  March 18, 2011                Respectfully submitted,

/s/  Michael Richardson
Joe W. Redden, Jr.
State Bar No. 16660600
jredden@brsfirm.com
Michael Richardson
State Bar No. 24002838
mrichardson@brsfirm.com
BECK REDDEN & SECREST, LLP
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Mark G. Matuschak
mark.matuschak@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

S. Calvin Walden
calvin.walden@wilmerhale.com
Kate Hutchins
kate.hutchins@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

James M. Dowd
james.dowd@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

**_Attorneys for Research In Motion Limited_**
**_and Research In Motion Corporation_**

14

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service,  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this March 18, 2011.


/s/ John F. Garvish, II
John F. Garvish, II